FILED
2014 Oct-09  PM 02:47
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRACI INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:13-cv-01444-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.     Introduction

The plaintiff, Traci Ingram, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. Ingram timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Ingram was forty-four years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a twelfth grade education. (Tr. at 58, 46-47.) Her past work experience includes employment as a manager at a fast food restaurant. (Tr. at 19, 59.) Ms. Ingram claims that she became disabled on November 1, 2008, due to pain and limitations from peripheral neuropathy and lymphedema caused by her

radical hysterectomy and treatment she received for cervical cancer. (Tr. at 67, Doc. 11 at 6.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Ingram meets the insured status for disability benefits through March 31, 2009, her date last insured.  (Tr. at 17.) He further determined that Ms. Ingram has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's impairment of "status post left foot fracture" is considered "severe" based on the requirements set forth in the regulations. (*Id.*)  The ALJ found

that this impairment neither meets nor medically equals any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) The ALJ did not find Ms. Ingram's pain allegations to be totally credible, and determined that she has the following RFC: "to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except claimant graduated high school, can sit for six hours out of an eight hour day, can stand up to two hours in an eight hour day and can basically perform sedentary work. Further, claimant also requires a sit-stand option." (Tr. at 18.)

Based on this RFC, the ALJ found that Ms. Ingram is unable to perform her past relevant work as a fast food manager, she is an "individual of younger age," and she has "at least a high school education," as those terms are defined by the regulations. (Tr. at 19.) He determined that transferability of skills was not an issue in this case because "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (*Id.*) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ relied on the Vocational Expert ("VE") in finding that there are a significant number of jobs in the national economy that the plaintiff is capable of performing, such as surveillance system monitor, eye glass frames polisher, and toy stuffer. (Tr. at 19-20.) The ALJ thus concluded his findings by stating that Plaintiff

was not disabled within the meaning of the Social Security Act at any time from her alleged onset date of disability through the date last insured. (Tr. at 20.)

II.     Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* " The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for " despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Plaintiff contends that the ALJ's decision should be reversed and remanded because the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms in accordance with the Eleventh Circuit's " pain standard." (Doc. 11 at 5.) Specifically, Ms. Ingram alleges that the ALJ failed to give credit to the Plaintiff's testimony of disabling pain and limitations resulting from peripheral neuropathy and lymphedema. (Doc. 11 at 6.)

Disability benefits may not be paid solely on the basis of a claimant's own self-serving complaints. *See* 42 U.S.C § 423(d)(5)(A). However, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th

Cir.1995). To establish disability based upon pain and other subjective symptoms, the Eleventh Circuit has set forth a two-part standard: " The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (*citing Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991)).

Once the plaintiff has met the pain standard, the ALJ then considers the plaintiff's subjective testimony of his symptoms. *Foote*, 67 F.3d at 1560; *see also* 20 C.F.R. § 404.1529 (2013). The ALJ may discredit Plaintiff's subjective testimony, but he must provide sufficient reasons for this decision. *Wilson*, 284 F.3d at 1225; *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) (" [T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements." ). There is no precise formula that the ALJ must follow when explaining why he has discredited a plaintiff's testimony, however " the implication must be obvious to the reviewing court." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983). In determining credibility, the ALJ may consider evidence

such as a plaintiff's medical history, medical treatment plan, and reported daily activities. 20 C.F.R. § 404.1529(c)(3) (2013).

Here, the ALJ found that Plaintiff's medically determinable impairments, which included her status post cervical cancer, could reasonably be expected to cause the symptoms she was alleging, including peripheral neuropathy. (Tr. at 18-19.) However, as noted, meeting the pain standard does not automatically end the ALJ's analysis if the ALJ rejects the plaintiff's complaints for lack of credibility. *See Foote*, 67 F.3d at 1560-61 (meeting the judicial pain standard is only a threshold inquiry and the ALJ may reject the complaints by offering specific reasons); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir.1992) ("After considering a claimant's complaints of pain [under the above standard], the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir.1984)). The ALJ correctly continued the analysis of whether Plaintiff's complaints of pain and swelling were credible by taking her subjective testimony into account. (Tr. at 19.) During this analysis, the ALJ found "the claimant simply alleges a greater degree of debilitation than what the other evidence can support." (*Id.*)

Plaintiff complains that "[the ALJ's] decision gives little guidance as to the reasons why he actually found the Plaintiff did not meet the standard." (Doc. 11 at 6.)

However, the Court finds that the ALJ provided sufficient reasons for discrediting Plaintiff's testimony, such as pointing out that Plaintiff's subjective allegations of pain were inconsistent with her medical records and her reported daily activities. (Tr. at 18-19.)

As an initial matter, the Court notes that Plaintiff's case involves an issue of insured status.  To be eligible for DIB, a claimant must prove she became disabled prior to the expiration of her disability insured status.  *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Plaintiff's disability insured status expired on March 31, 2009, which was her date last insured.  (Tr. 17).  Plaintiff, therefore, had to prove she was disabled during the five-month period from November 1, 2008, her alleged onset, until on or before March 31, 2009, to be eligible for DIB.  The record includes numerous medical records from after Plaintiff's date last insured, which Plaintiff argues supports her allegations of disabling symptoms, but these records do not support her allegations of disabling limitations on or before the date last insured.  *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) (any indication that claimant's condition may have worsened after her date last insured is irrelevant to the

issue of disability).[1]

Even if these records were relevant to Plaintiff's condition prior to the date last insured, they still do not support her allegations of disabling symptoms.  The ALJ first called attention to a letter to Plaintiff's insurance company dated January 29, 2009, from Dr. Mack Barnes, Plaintiff's gynecologist, in which Dr. Barnes indicated "the swelling in Plaintiff's lower bilateral extremities was minimal."  (Tr. at 227.)  He prescribed the Flexitouch system for truncal/genital swelling.  (Tr. at 227.)  The insurance company denied the claim for the Flexitouch system because the photographs of Plaintiff's swelling did not demonstrate severe lymphedema.  (Tr. at 229.)  Dr. Barnes's letter of May 11, 2009, stated the plaintiff not only tolerated the Flexitouch system treatment well, but it was effective and reduced her symptoms. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986) (noting that a symptom reasonably controlled by medication or treatment is not disabling).  The ALJ also noted that during a followup visit with Dr. Barnes on November 2, 2011, one month before the

---

[1] In *Bonner v. City of Pritchard*, 661 F.3d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

ALJ's decision was issued, Plaintiff's physical exam was generally normal; she had no leg swelling; the neurological exam and musculoskeletal exams were normal; bladder was normal; and no genital swelling was noted.  (Tr. at 636-37.)

The plaintiff alleged that the ALJ failed to properly consider her longitudinal medical history. (Doc. 11 at 14.) However, Plaintiff only cited one medical record, the initial letter from Dr. Barnes to her insurance company, that is dated before March 31, 2009, the date last insured, that corroborates her subjective complaint of pain caused by lymphedema. (Tr. at 227.) The remainder of the medical records Plaintiff cited were dated after the date last insured.  For example, Plaintiff cites treatment notes from August 20, 2009, after the date last insured.  These notes document Plaintiff's *complaints* of numbness, tingling, and weak limbs for the year prior to the treatment date; but she also indicated that her condition had become progressively worse. *See Demandre,* 591 F.2d at 1090 (any indication that claimant's condition may have worsened after her date last insured is irrelevant to the issue of disability). Moreover, the notes indicated that Plaintiff had not previously sought treatment for these symptoms and did not include any objective clinical findings supporting her complaints. (Tr. at 262).  Plaintiff did not identify any further treatment for numbness, tingling, or weak limbs, until over a year later, on September 23, 2010. (Tr.

at 653, 655).  On that occasion, Plaintiff stated to Dr. Gwen Claussen, her neurologist, that her symptoms had only begun in the summer of 2009, which was after the date last insured. (Tr. at 653). She reported tingling in her fingertips that would come and go, and denied any weakness in her hands or arms. (Tr. at 653).  There was only mild edema in the lower extremities, and no clubbing on cynosis.  (Tr. at 655). The ALJ also acknowledged that the plaintiff underwent a nerve conduction study on October 7, 2010, which showed polyneuropathy of the bilateral lower extremities. (Tr. at 649.) However, this study was completed a year and a half after the plaintiff's date last insured and not does reflect her condition before her date last insured.

The ALJ's credibility determination is further supported by the testimony of the medical expert, Dr. Winkler, a board certified neurologist.  Contrary to Plaintiff's testimony that she must elevate each leg for one hour after her daily Flextouch system session and then for at least two hours during the day (tr. at 42), Dr. Winkler testified at Plaintiff's December 8, 2011 hearing that nowhere in Plaintiff's medical records did he see any instructions from a doctor directing her to elevate her legs. (Tr. at 43.) He also testified that doing so would not be related to pain and neuropathy, but for edema, that is, swelling of the legs. (*Id.*)  Dr. Winkler also testified that although the October 2010 nerve conduction study demonstrated the presence of neuropathy, it was not

useful in assessing Plaintiff's functional limitations, e.g., her ability to walk. (Tr. at 35.)  He also stated that Plaintiff's neuropathy was not of listing-level severity.  (Tr. at 17-18, 34.)  He further noted that the most recent medical records (from Dr. Barnes in November 2011) indicated that there was no swelling.  (Tr. at 43, 634.)

The ALJ also noted that Ms. Ingram's "daily activities also suggest that although claimant is limited, she is not disabled as a result of her impairments." (Tr. at 18.) Although not dispositive, a plaintiff's activities may show that her condition is not as limiting as she alleged. *See* 20 C.F.R. § 404.152(c)(3)(I); SSR 96-7p, 1996 WL 374186; *Dyer*, 395 F.3d at 1212; *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir.1987). Courts have upheld an ALJ's adverse credibility determination when it was based in part on the claimant's stated ability to take care of her personal needs, including performing errands. *See, e.g., Parks v. Comm'r*, 353 F. App'x 194, 197 (11th Cir.2009) (unpublished).  The ALJ pointed out that while Plaintiff states she is unable to work, she has continued to report a fairly high level of functioning. (Tr. at 180-85.) The plaintiff testified that she is able to take care of her personal needs with little help, including preparing simple meals daily. (Tr. at 181-82.) She also explained that she can perform limited household chores such as light cleaning and laundry (tr. at 182), she occasionally goes shopping for her children (tr. at 183), and states she can still

exercise. (tr. at 184.) The ALJ also pointed out that Ms. Ingram spends time with others (tr. at 184) and can pay bills, count change, and handle a savings account. (Tr. at 183.) Plaintiff's ability to perform these daily tasks provides additional support to the ALJ's discrediting of her testimony of disabling pain.

In sum, the ALJ specifically addressed Plaintiff's allegations of pain and provided explicit reasons for rejecting her testimony as not entirely credible. (Tr. at 17-19.) *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir.1989) (ALJ properly discredited the plaintiff's testimony where he specifically articulated at least three reasons for rejecting the plaintiff's subjective complaints).  Indeed, the ALJ even considered evidence after the plaintiff's DLI, including the most recent treatment notes from April and November 2011, which undermined Plaintiff's complaints of disabling limitations.  (Tr. at 18, 634, 636-37.)  The objective medical evidence and the testimony of the plaintiff support the ALJ's conclusion that Plaintiff's impairments are not of such intensity or persistence that they prevent her from performing sedentary work with a sit-stand option. (Tr. at 18-20.)

IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Ingram's arguments, the Court finds the Commissioner's decision is supported by substantial

evidence and in accord with the applicable law. A separate order will be entered.

Done this 9th day of October 2014.

L. Scott Coogler
United States District Judge

[160704]